UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICOLE LAWTONE-BOWLES,

      Plaintiff,

-against-

THE CITY OF NEW YORK; THE CITY OF
NEW YORK DOT; THE CITY OF NEW YORK
DEPARTMENT OF HEALTH AND MENTAL
HYGIENE; THE CITY OF NEW YORK
DEPARTMENT OF FINANCE; THE CITY OF
NEW YORK POLICE DEPARTMENT TRAFFIC
AGENTS; THE CITY OF NEW YORK OFFICE
OF THE CORPORATION COUNSEL (LAW),

      Defendants.

21-CV-5620 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

  Plaintiff, who is proceeding *pro se* and *in forma pauperis*, filed this complaint alleging that the New York City Department of Transportation (DOT) denied her application for a Parking Permit for People with Disabilities (PPPD). By order dated July 12, 2021, the Court construed Plaintiff's complaint as asserting claims under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–12134, which prohibits discrimination by public entities in the provision of public services, programs, or activities, and directed Plaintiff to amend her complaint to address deficiencies in her original pleading. Plaintiff filed an amended complaint on July 26, 2021, and the Court has reviewed it. The action is dismissed for the reasons set forth below.

## STANDARD OF REVIEW

  The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B);

*see* Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that, under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following allegations are from Plaintiff's amended complaint. Plaintiff has been permanently disabled since 2008. (ECF 7 at 6.) She is 49 years old, has had "bilateral knee

replacements," and suffers from "advanced arthritis and other illnesses." (*Id.* at 7.) Since 2008, Plaintiff has applied to the DOT six times for a PPPD, also known as a Special Vehicle Permit, but "the City of New York has rejected [her] parking permit request[s]." (*Id.*)

Plaintiff has a New York State "handicap parking permit," which she contends is "not recognized by the City of New York." (*Id.*)[1] She attaches information that appears to have been printed from the website of the DOT stating that the state permit "is valid everywhere in New York State where there are designated parking spaces for people with disabilities," but that in New York City (NYC), designated spaces are limited to "off-street" parking, such as parking lots for malls, office buildings, or college campuses.[2]

Plaintiff attaches the DOT's June 22, 2021 decision denying her application for a NYC PPPD. (*Id.* at 10.) It states that a certifying physician from the NYC Department of Health and Mental Hygiene (DOHMH) "determined that the documentation you submitted with your application does not support a finding of 'a permanent disability seriously impairing mobility.'" (*Id.*) The June 22, 2021 decision further notifies Plaintiff that she can appeal, and to do so, she must submit "**new** supporting medical documentation about [her] permanent disability that seriously impairs [her] mobility. The documentation must be dated within the past twelve months." (*Id.*) Attached to the decision is a form that states: "Please take this form to your doctor." (*Id.* at 12.) The DOHMH certifying physician wrote on the form that Plaintiff needs new evidence for "lumbar radiculopathy & EMG/NAS as supportive evidence," as well as

---

[1] The two programs have different eligibility requirements. *Compare* N.Y. Veh. & Traffic Law § 404A (criteria for New York State permit) *with* Title 24, RCNY Ch. 16, § 16-02 (criteria for New York City PPPD permit).

[2] According to documents attached to the amended complaint, a New York City PPPD entitles holders to park at metered spaces without charges, and in spaces otherwise designated "no parking" due to street cleaning or truck loading, or spaces designated for authorized vehicles. (ECF 7 at 20.)

"orthopedic ev[idence] for osteoarthritis/ rheumatoid arthritis [with] MRI of involved joints." (*Id.*) Plaintiff alleges that she has submitted "several proofs of [her] disability." (*Id.* at 6.)

Plaintiff attaches to the complaint her June 30, 2021 appeal letter, in which she writes the following:

> I am permanently disabled since 2008. I work for the City of New York and due to my bilater[al] knee replacements and fibromyalgia, I cannot take mass transit. I need my own car because it has equipment so I can be independent. This is a violation of the Americans with Disabilities Act. I keep getting denied.

(*Id.* at 8.) Plaintiff does not indicate that she submitted new medical documents on appeal or indicate whether she received a response to her appeal.[3]

Plaintiff details the injuries that she has suffered due to the denial of the PPPD, including that she has moved to upstate New York, that she has spent significant sums on ride sharing services (Lyft, Uber), and that she has received numerous parking tickets. (*Id.* at 6.) Plaintiff contends that "[t]he State or local government agencies must provide accessible parking spaces as required by the ADA Standards for Accessible Design . . . 28 C.F.R. Part 36," and she attaches information about these federal regulations. (*Id.* at 6, 14-15.) She further contends that "the Citibike Program [is] taking all No Parking Anytime spaces designated for people with disabilities parking permits." (*Id.*)

Attachments to the complaint appear to show that Plaintiff worked for the City of New York as a sanitation enforcement agent for four months in 2012, and as a "motor vehicle operator" with the Department of Homeless Services (DHS) from 2013 to June 2021, though she had extended periods of approved leave without pay or periods during which she was

---

[3] An individual whose application for a PPPD is denied may appeal DOHMH's denial of certification "within thirty business days of service of the decision denying the certification upon the applicant, on a form received with the decision." Title 24, RCNY Ch. 16, § 16-05. The determination of such an appeal is final "when it is adopted by the Department." (*Id.*)

"suspended." (*Id.* at 17.) On a separate page, Plaintiff writes, "city agency must provide reasonable accommodations to applicants and employees . . . ." (*Id.* at 16.)

Plaintiff sues the City of New York, three city agencies (DOT, DOHMH, and the Department of Finance (DOF)), as well as the NYC Corporation Counsel and an uncertain number of DOF "traffic agents." Plaintiff seeks $20 million in damages and a DPPP for NYC.

## DISCUSSION

### A.   Local Law Claim - Denial of Parking Permit For People With Disabilities

Plaintiff appears to disagree with the DOT's decision, which was based on the DOHMH physician's assessment of the medical documentation provided, that she either (1) does not have "a permanent disability seriously impairing mobility" as required under N.Y.C. Charter § 2903(a)(15)(a) to qualify for a PPPD, or (2) did not submit sufficient medical documentation of such a disability. A litigant who disagrees with the final decision of an administrative agency of the City of New York can challenge that decision in a proceeding under N.Y.C.P.L.R. Article 78 – an "Article 78 proceeding" – which is "a streamlined process for challenging the determinations of . . . administrative agencies." *Doe v. NYU*, No. 21-CV-2199 (SHS), 2021 WL 1662532, at *5 (S.D.N.Y. Apr. 28, 2021); *see, e.g., Jacobson v. New York City Dept. of Transp.*, 939 N.Y.S.2d 741 (2011) (Article 78 proceeding by applicant with diabetes who was denied PPPD on the ground that he did not have a "permanent disability seriously impairing mobility"); *Mazza v. Ameruso*, 99 Misc.2d 230 (1979) (in Article 78 proceeding, litigant succeeded in overturning a decision of the Commissioner of the DOT denying renewal of a PPPD because litigant did not own a car).

Here, Plaintiff does not allege that she has received a final decision on an administrative appeal, and thus it is unclear if her claims are ripe for an Article 78 proceeding. Even if they were ripe, however, the Court would decline to exercise supplemental jurisdiction over

Plaintiff's administrative claims. Article 78 is a "novel and special creation of state law ... 'designed to facilitate a summary disposition of the issues presented,'" *Lucchese v. Carboni*, 22 F. Supp. 2d 256, 258 (S.D.N.Y. 1998) (quoting *Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cir. 1986)). State law vests jurisdiction over Article 78 proceedings exclusively in New York Supreme Court. Federal courts routinely decline to exercise supplemental jurisdiction over claims subject to Article 78 review, citing the special solicitude afforded to this "purely state procedural remedy." *Camacho v. Brandon*, 56 F. Supp. 2d 370, 380 (S.D.N.Y. 1999); *Birmingham v. Ogden*, 70 F. Supp. 2d 353, 372 (S.D.N.Y. 1999) ("[F]ederal courts are loath to exercise jurisdiction over Article 78 claims."); *Lucchese*, 22 F. Supp. 2d at 258 (S.D.N.Y. 1998) ("Article 78 proceedings were designed for state courts, and are best suited to adjudication there."); *Herrmann v. Brooklyn Law School*, 432 F. Supp. 236, 240 (E.D.N.Y. 1976) ("[T]his special proceeding designed to accommodate to the state court system is best suited to that system."); *see* also *Cartagena v. City of New York*, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003) (Chin, J.) (state law does not "permit Article 78 proceedings to be brought in federal court, and hence I conclude that I do not have the power to exercise supplemental jurisdiction over [plaintiff's] Article 78 claims").[4]

If Plaintiff wishes to challenge the DOT's denial of her PPPD, she can do so in an Article 78 proceeding in the New York Supreme Court once she receives a final decision on appeal.[5]

---

[4] On the related question — not at issue here— of whether federal courts may properly exercise *diversity* jurisdiction of Article 78 claims, a district court recently held that because "federal diversity jurisdiction is nondiscretionary," "federal courts may properly exercise diversity jurisdiction over Article 78 claims," noting that "[t]he U.S. Court of Appeals for the Second Circuit has not yet conclusively resolved the question of federal court jurisdiction over Article 78 claims." *Doe v. NYU*, 2021 WL 1662532, at *6.

[5] The only questions that may be raised in an Article 78 proceeding are whether the challenged body "failed to perform a duty enjoined upon it by law," or whether its actions were

The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

**B.     Title I of the ADA**

Plaintiff's complaint could be liberally construed, in part, as alleging that the City of New York, as Plaintiff's current or former employer, failed to accommodate her disability by granting her a PPPD. A claim that an employer failed to accommodate an employee's disability arises under Title I of the ADA, 42 U.S.C. §§ 42 U.S.C. §§ 12101 to 12213.

An employer is liable for a failure to accommodate if: "(1) [the] plaintiff is a person with a disability under the meaning of the [applicable statute]; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of N.Y.*, 711 F.3d 120, 125–26 (2d Cir. 2013).

"The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. N.Y.S. Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000); *see also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 218-19 (2d Cir. 2001). The reasonableness of an employer's accommodation is a "fact-specific" question that often must be resolved by a factfinder. *See Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir. 1996). "[Although] the preference of the individual with a disability should be given primary consideration[,] . . . the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." *Noll v. IBM*, 787 F.3d 89, 95 (2015). Moreover, if an "employer has

---

"without or in excess of jurisdiction," "arbitrary and capricious or an abuse of discretion," or not "supported by substantial evidence." N.Y. C.P.L.R. § 7803(1)-(4).

already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is 'plainly reasonable.'" *Id.* at 96; *see also Fink v. N.Y.C. Dep't of Personnel*, 53 F.3d 565, 567 (2d Cir.1995) ("[The reasonable accommodation requirement] does not require the perfect elimination of all disadvantage that may flow from the disability.").

Here, Plaintiff alleges facts that suffice at this stage to plead that she is disabled within the meaning of the ADA. *See* 28 C.F.R. § 35.108 (Disability for purposes of the ADA is construed broadly "in favor of expansive coverage."); *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020).[6] But Plaintiff fails to plead basic facts about whether she requested a PPPD as an accommodation from her employer, and if so, how her employer responded.[7] It is also unclear from Plaintiff's allegations whether she could perform the essential functions of her job if she had a PPPD. Plaintiff's allegations thus fail to state a claim under Title I of the ADA.

Moreover, it appears that it would be futile to grant Plaintiff further leave to replead such a claim. First, Plaintiff has already litigated her claims that the City of New York, as her

---

[6] The ADA's criteria for disability are not the same as the criteria for determining whether an individual has "a permanent disability seriously impairing mobility" qualifying the individual for a NYC PPPD. *See Jacobson v. New York City Dep't of Transp.*, 939 N.Y.S.2d 741 (Sup. Ct. 2011) (rejecting claim, in Article 78 petition, that individual who met the ADA's definition of disability in ADA was entitled to a PPPD because "PPPDs are not issued to applicants based on the definition of disability in the ADA, but instead are issued based on criteria established by 24 RCNY § 16–02.").

[7] Plaintiff also does not allege that she exhausted her administrative remedies by filing a charge, with the New York State Division of Human Rights or the U.S. Equal Employment Opportunity Commission, about her employer's failure to accommodate her with a PPPD. Failure to exhaust, however, is not a jurisdictional defect. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"); *Fernandez v. Chertoff*, 471 F.3d 45, 58 (2d Cir. 2006) ("Because [the] failure to exhaust [one's] administrative remedies is not a jurisdictional defect, it is subject to equitable defenses.").

employer, failed to accommodate her disability. *See Lawtone-Bowles v. City of New York*, ECF1:17-CV-8024, 45 (S.D.N.Y. Feb. 15, 2019) (dismissing with prejudice Plaintiff's federal, state, and city law claims for discrimination, hostile work environment, and retaliation, and denying the City of New York's motion to dismiss the claims that it failed to accommodate her disability with light duty work; parties then settled claims and action was discontinued). "A party cannot avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted). Plaintiff cannot relitigate a claim under Title I of the ADA against her employer, if it arises from the same period, on a new theory that the City of New York has failed to accommodate her disability by providing a PPPD for her.

Finally, there is no reason to think that a PPPD is available to Plaintiff as an accommodation simply because the City of New York operates both DHS, the agency where Plaintiff works (or worked), and the DOT, which issues such permits. Put another way, an accommodation that the employer is unable as a matter of law to provide cannot be a reasonable accommodation.

The rules for issuing a PPPD require that an applicant meet certain criteria, Title 24, RCNY Ch. 16, § 16-02; N.Y.C. Charter § 2903(a)(15)(a) (applicant must be certified by the DOHMH "as having a permanent disability seriously impairing mobility"), and do not include any exceptions that would allow the DOT to treat differently city employees who would not otherwise qualify. Plaintiff alleges that the DOHMH has not certified that she meets the criteria for a PPPD, and the rules therefore do not provide for a PPPD to issue, even if Plaintiff's employer wanted her to have a PPPD to facilitate her employment. Plaintiff's allegations that the City of New York discriminated against her in employment by failing to accommodate her

9

disability with a PPPD thus fail to state a claim upon which relief can be granted and it would be futile to grant her leave to replead such a claim.

**C.     Title II of the ADA**

The Court also considers whether Plaintiff's amended complaint states a claim under Title II of the ADA, which provides as follows:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

To state a claim under Title II, a plaintiff must allege "'(1) that she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability.'" *Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021) (quoting *Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016)). A qualified individual with a disability is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

A reasonable modification is one that, among other things, does not "fundamentally alter the nature of the service, program, or activity." *Powell v. National Bd. of Medical Examiners*, 364 F.3d 79, 88 (2d Cir. 2004); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) (reasoning that disabled golfer's use of golf cart would not fundamentally alter athletic event because the essence of golf is "shot-making" and rule requiring walking was peripheral). "[T]he

10

ADA's reasonable modification requirement contemplates modification to state laws, thereby permitting preemption of inconsistent state laws, when necessary to effectuate Title II's reasonable modification provision." *Mary Jo C. v. New York State & Loc. Ret. Sys.*, 707 F.3d 144, 163 (2d Cir. 2013).

Here, as set forth above, Plaintiff's allegations may suffice at this stage to plead that she is disabled within the meaning of the ADA. But Plaintiff's allegations do not show that she is a "qualified individual" who either (1) "meets the essential eligibility requirements," 42 U.S.C. § 12131(2), for participation in the PPPD program, or (2) could do so with "reasonable modifications to rules, policies, or practices," *id*. Instead, Plaintiff's allegations reflect that DOHMH informed her that she is ineligible because the medical documentation that she "submitted with [her] application does not support a finding of 'a permanent disability seriously impairing mobility.'" (*Id.* at 10.)

An applicant need not meet all of a program's "formal legal eligibility requirements" to be a qualified individual – only the essential ones. *Mary Jo C.*, 707 F.3d at 161. Having "a permanent disability seriously impairing mobility" is plainly essential to the PPPD program, which targets those who "require the use of a private automobile for transportation." N.Y.C. Charter § 2903(a)(15)(a); *see also Lai v. New York City Gov't*, 163 F.3d 729, 731 (2d Cir. 1998) (noting that in light of "the limited number of on-street parking spaces," the City's policy goal, in enacting PPPD program, "to give the scarcest parking spaces to those who are severely handicapped" was reasonable").

If Plaintiff seeks to show that the DOHMH's determination that her medical documentation is insufficient is arbitrary and capricious, the proper vehicle for her claim is an Article 78 proceeding in state court. But insofar as Plaintiff seeks to be awarded a PPPD without

11

meeting the "formal legal eligibility requiremen[t]," *Mary Jo C.*, 707 F.3d at 161, that she have "a permanent disability seriously impairing mobility," the requested modification is unreasonable because this eligibility requirement is not peripheral; rather, awarding a PPPD to someone who does not have "a permanent disability seriously impairing mobility," would "fundamentally alter the nature of the service, program, or activity." *Powell*, 364 F.3d at 88.

Moreover, in light of Plaintiff allegations that the DOHMH physician concluded that she did not have "a permanent disability seriously impairing mobility," she fails to allege facts showing that the discrimination, even in part, was "due to her disability.'" *Tardif*, 991 F.3d at 404; *see also Doe v. Pfrommer*, 148 F.3d 73, 84 (2d Cir. 1998) (holding that the ADA does not "establish an obligation to meet a disabled person's particular needs vis-à-vis the needs of other [disabled] individuals."). Plaintiff's allegations thus also fail to state a claim that the denial of a PPPD violated her rights under Title II of the ADA.

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's amended complaint cannot be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

A district court may decline to exercise supplemental jurisdiction of state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of Plaintiff's state-law claims. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367

'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

## CONCLUSION

Plaintiff's amended complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court declines, under 28 U.S.C. § 1367(c) to exercise supplemental jurisdiction of the state law claims that Plaintiff is asserting.

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   August 23, 2021
         New York, New York

                                          /s/ Laura Taylor Swain
                                          LAURA TAYLOR SWAIN
                                          Chief United States District Judge